When you're ready. May I please the court. Two errors at Mr. Naholi's trial require reverse and remand for a new trial. First, the District Court erred in excluding Karen Franks Naholi's prior inconsistent statements. These were not hearsay and met the requirements of Rule 613B. Second, the prosecutor committed reversible prosecutorial misconduct by repeatedly shifting the burden of proof during its rebuttal argument. Unless the court has an issue, it would prefer I address first, I can turn to the exclusion of the prior and consistent statements. The District Court erred by excluding the testimony of Officer Hannah Thurston regarding two statements made by Karen Franks Naholi. First, Mrs. Franks Naholi testified at trial that she told law enforcement that she never saw any other firearm in the house. Officer Thurston's offer of proof indicated that her statement was actually that she never saw any firearm at the house. Second, Mrs. Franks Naholi denied telling law enforcement at trial. She denied telling law enforcement that Mr. Naholi might have had a firearm. I guess more accurately, she said she did not remember stating that making that statement. Officer Thurston's testimony would indicate that she did tell law enforcement on the night of the incident that Mr. Naholi might have a firearm. These statements are inconsistent. This any versus any other is an inconsistency. The government responds to that by saying, well, it could be confusion. Well, that's a good argument that the government could make before the jury, but that's not a basis for excluding it as a prior inconsistent statement. And further, the I can't remember statement under the circuit's case law is a basis for finding that it's inconsistent because they are inconsistent. They are admissible for purposes of impeachment. So long as the requirements of 613 B were met here and they were both met here in this case. Mrs. Franks Naholi was offered the opportunity to explain or deny and there was both cross and then redirect by the government to her on those statements. I'd also address the question of air preservation. These are preserved under Yarrington. Yarrington requires in these circumstances a discussion of there the defense attorney state misstated that it was hearsay, but it was offered for impeachment here. There was a reference to under 801. It's not hearsay because under 801 the definition of hearsay requires that it be offered for its truth. And so here by stating it's admissible under 801 because it's impeachment. It's acknowledging that it's not offered for its truth. 801 D is not ever was not ever brought up. It was never the basis for it and it's completely irrelevant to this argument on appeal. This era also was not harmless this the one of the major questions for the jurors was going to be how did that firearm get out of the closet and it came down to two people Karen Franks Naholi and the defendant and part of establishing that her testimony that she hadn't moved it shouldn't be believed was pointing out all of the different statements. Mrs. Franks Naholi made and the inconsistencies that were within them. So it was incredibly important to the defense and she was shown to have made inconsistent statements and to quite frankly just be lying on the stand and to law enforcement officers and Matty Davis's testimony is not enough to establish harmless error both in the 911 call and in her testimony before the jury. She was hesitant and she was stated. I'm not sure she had pauses. Those kind of problems with their testimony cannot get over the air and excluding this prior and these prior and consistent statements. Second the prosecutor committed reversible prosecutorial misconduct by repeatedly making burden shifting comments during the rebuttal argument. This is improper because it violates violated. Mr. Naholi's 5th Amendment right against self-incrimination during his criminal trial. There was one objection, right? There was your honor. Now you claim it goes to a lot more stuff than it looks like it goes to so tell me how you how you argue that I would acknowledge right off the bat that it's difficult to get to the DNA argument, but I our position is it's the same line of argument that the government was making and the objection had already been overruled this argument of why don't they put on the evidence? So our position is is that establishes we were objecting to the line of argument. I acknowledge that's a harder argument to make but as to the first two statements the government even states that the objection interrupted the argument. So it was one line of thought and the to object when the argument begins. It's unnecessary to object again when the argument ends. It's all within the same paragraph just a couple of sentences. So I think to those first two arguments of why didn't they put on witnesses to testify as to what Mr. Naholi was or was not doing out in the front yard. Those are unquestionably preserved and here all of these statements are burden shifting and they are improper. There is an exception that this court and many other courts acknowledged that when a defense attorney comes out and says There's this specific witness. Why didn't the government call them? That the prosecutor then on rebuttal can say the defense attorney has a subpoena power. They could call this person. The reasoning for that exception is that when a defense attorney when they do that and they make those arguments they either explicitly or implicitly are stating the government didn't call this witness because they were bad for the government. That's not what was happening here. The government's proposal would have the exception swallow the rule and instead they're saying with general arguments that quite frankly occur in 90% of criminal trials of there's not very many witnesses and they don't have DNA evidence and they don't have physical evidence that this somehow opens the door for the government to say why didn't they put them on that is too broad and overly broad with this limited exception that this court and other courts have recognized and the Hernandez case cited in our brief makes that clear that there is this distinction between when it is permissible. The cumulative effect of this misconduct requires reverse and remand for a new trial. There were multiple burden shift in comments made and they were done so in rebuttal and this court has acknowledged that when prosecutorial misconduct occurs during rebuttal. It is especially harmful because it doesn't give the defense attorney a chance to stand up and address those comments to the jury for the reasons. I've already discussed the way to the evidence in the presented by the government doesn't establish that these comments were not prejudicial. Finally, there was insufficient curative action taken in this case again. The objection was overruled so there was no direct address to the jury that these comments are improper. Did you ask for one some kind of instruction or anything? No, not after the objection was overruled. The only potential curative action taken this week and that's the general instruction that occurs in every criminal trial that arguments are not evidence. This court has stated before and another case on prosecutorial misconduct that that isn't, you know, give a prosecutor the ability to say whatever he or she might say because then then that would just allow any kind of comment to come in. So that instruction by itself is not enough to defeat the prejudice that occurred in this case. Is your mention of the neighbors enough to open the door? So to speak? No, your honor. Well, you did say that right here. I know you weren't the person. I mean the client. Yes, there was a the discussion was there's generally discussing. There's only one witness, right? There's this isn't a neighborhood Saturday night and there's nobody else coming out. They can't hang out the windows, right? There's only one witness. There was never like we see in those other exceptions where the courts have stated that's allowed. They're not calling them because they'd be bad for you. The argument was generally this is an this is a weakness in the government's case. I just have one last thing when you mentioned that there's the harm is greater in a rebuttal argument. One of the things that that is true is that requests for sound discretion of the trial judge in the as a curative measure and yet no one ever asks for him. I mean, I think that in my time on the bench. I've allowed cerebral arguments three or four times but almost always sua Spontae in response to an objection is any reason why that's never asked for and why it didn't happen this case as far as why it's never asked for it. I think it's incredibly rare. I have never seen that before. And in this case, I think when the objection is shut down and it's overruled the idea of saying well, I think this was wrong. So can I have a sir rebuttal the district court had already indicated its belief that the argument was acceptable. Thank you. Miss quick and we'll ride your time to a minute. So, you know to prepare. All right. Thank you. Mr. Murphy. May it please the court. I'll address first the the alleged abuse of discretion excluding the so-called extrinsic evidence of the out-of-court statement of Miss Frank's Nahali. I just will move to the ultimate issue in this matter. I'm not going to argue the the preservation or the late proffer and all that stuff. I'm just because I think what is really at issue here is we'll get to the nub of it and there was no material interest. You're not waving that are we? I'm not waving at your honor, but I don't think those are my best arguments right now. No, I know go ahead. So the offer proof you assume that was timely assume everything else. There was no material inconsistency here and there was no proper impeachment. First of all, 613 requires a witness be confronted with the statement here that didn't happen. And the reason I make the first two arguments that I'm not really going to argue about here is I think it's unfair to put a district court judge in a position of having to assume what the what the party is is really arguing but if you even assume that 613 is what applies here, it requires that the witness be confronted with the statement and she was not told officer Thurston officer Thurston was going to be the witness to say what she told what Karen Franks the Holy supposedly told officer Thurston. There was nothing in the record about her being confronted by officer Thurston and the witness is entitled to be to be questioned about that and confronted. Didn't you tell officer Thurston XYZ that didn't happen? She also admitted this question about whether she'd ever seen a gun never seeing any other firearm in the house in the context of the case. I say suggest that really is somewhat disingenuous. She said she had a gun. She had the gun in the closet. She testified that what she said what she told the officer was that there was no other gun in the house. There was no question that Karen Franks the Holly knew there was a gun in the house in the closet. Well, she does testify. She had never seen one and then she goes on to say but what I meant was that in the context that I'd never seen any other gun in the house at page 46. She admitted she never seen any other gun in the house. So that's not a material inconsistency. I would say on this record in addition as to this point of whether she'd ever discussed seeing the defendant with a she did say that she didn't remember telling the officer telling this is telling a different officer that he might have had a handgun. It doesn't recall saying that but could have said that because defendant did previously tell her that he had a handgun. So again, there's no inconsistency even if it had been properly confronted with what officer Thurston was going to say that she had said that the defendant had previously had a handgun. She admits that the defendant had told her that he previously had a handgun. And again, even as to just trying to understand sort of the relevancy or how this fits in Miss Franks. The Holy said she never saw her husband of 40 years younger in age. That's another issue but never saw her husband with a gun on that evening. The question was at issue at trial was did he possess a gun on that evening? She said no, I never saw him with a gun on that evening. I never saw a gun in the house that night and they're trying to impeach Miss Franks to Holly who is giving favorable testimony to their client. It was puzzling to me but it's an argument obviously that they can make on of course their point as you know is inconsistency is inconsistency is inconsistency and they'd rather have all the inconsistency to talk to the jury about I understand but they also want to have her credible saying that he didn't have a gun that night and that he that she didn't see a gun in the house at night. So moving on to the to the rebuttal argument issue and that's you know, this is a obviously a very concerning one for me the just like to go through parts of the record here as to what the defense argued. They said the prosecution quote put words in the mouth of government wants you to just blindly accept its versions of events without focusing on the holes in this story quote the government's talking about people in jury selection you talked about watching crime shows and so forth and so much about how things happen in the first 20 30 minutes and then the story changes later in the in the show quote the government stopped after the first 20 to 30 minutes and they didn't dig deeper quote think about all the things the government didn't show you you quote you didn't hear anything about DNA or fingerprints the whole theory of the government's case touched on the gun quote. Why didn't you hear evidence to back it up talking about a seven-foot man in the front yard with a gun? The only eyewitness testimony that you heard was from Matty Davis and then they start to argue about the jurors you live in a neighborhood a lot of you live in a neighborhood where houses are close together quote. I know when the law enforcement goes to a house and I object at that point and then the defense continues think of circumstances in your own experience. What happens when a lot of commotion when law enforcement shows or arrives neighbors peek out the windows and everyone tries to see what's going on there might have been brave souls that open their doors quote, but you only heard Matty Davis I submit to you that's it taking all that in context the words. That's it follow. You only heard Matty Davis. That's it. Correct. That's it in context. I submit to you the defense is saying the government didn't put on this evidence and suggesting that this evidence is out there people look out the windows and all this and I had respond somewhat sarcastically. I'll admit that you know, where are all these people if all these people are looking out the window that surely somebody's going to testify they saw him that night. He had a cane and then of course, I'm interrupted and I'm sorry, but when I said you said they could have put them on all the people peeking out the windows. Go ahead. I did but I also got the point the objection happens. That's my real question. That's that's my guess. It is your proceed and then of course I had preceded that by saying of course we have the burden they don't have the burden but they could have put on if there's these witnesses peeking out their windows. They could have put them on there's an objection. My train of thought is interrupted. I kind of replow get back into my train of thought and move on from there. And yes, I did repeat the in essence that part of the argument and then moved on and then the next concern that they that they have is the reference to this to the DNA into the We were just talking about from the DNA. I know there are two pages. There are a couple minutes of argument two pages. Thank you very much proceed from 127 to 129 and you know, my argument was shorter than the defendants. My rebuttal argument was shorter than the defendants closing argument. I would submit to you. It was responsive to what to what arguments have been made and and again, it's our position. The argument was a fair response. I repeatedly said that the defendant does not have the burden. I also talked about the fact that the lack of evidence doesn't support either side. It's don't speculate about what evidence is not in the record. You must make your decision based upon what evidence is in the record and it appeared to me that part of the defense argument was urging the defense to consider things that were not in the record frankly that the defense knew that there was no evidence that even existed. So to suggest it in some way to my ears sounded like they were suggesting that I had done something improper that the government had done something improper asking them to blindly consider things that we were hiding some evidence that frankly there was no evidence of that. I knew of that existed on DNA on fingerprints on on other witnesses that weren't being called. The last point would be harmless air. If there was any air here, I would submit was harmless. There was strong evidence. There was a 911 call from a witness who was a friend of the defendant who was a neighbor who called and observed him with a gun called 911. This wasn't the defendants wife who called 911 and said, you know, I want to get him in trouble. She wasn't she was a loving wife. She indicated that she's she really was not so sure. She really wants him to go to prison. I mean they were she was going to get divorced but but there's no evidence to suggest that she had some that she was an impetus here in causing this this the police to come out that night. There was very limited value of Miss Nahaly's testimony and to the extent that it was favorable to the defendant that was the bet that was the better part of it. It was mostly favorable to the defendant that she claimed. She didn't see him with a gun didn't didn't know that he ever even knew about the gun in the house. I mean all that stuff was very favorable to the defendant. And of course we acknowledge in our closing arguments that that she appeared confused. I mean that that she definitely was confused and didn't hold her up as some paragon of absolutely absolute recall for what happened that evening. That's all I have. Thank you. Thank you. It's quick. So I first want to push back on the idea that the statements that the absence of evidence and pointing to the absence of evidence is somehow improper. And in fact the assertion that the statements that there is no evidence means nothing is fundamentally incorrect with our system of justice. The argument of if there's no evidence that supports that the government hasn't met its burden of proof to prove something beyond a reasonable doubt. So that's the argument that we're making. That's something that is done in virtually every criminal trial that defense attorneys especially in gun cases, which quite frankly, you rarely see DNA evidence in every single case. I've seen like that defense attorneys say, where's the DNA evidence? Where's the fingerprints? So to say that something that is just quite frankly an argument based off the most fundamental principle in criminal law somehow opens the door is could have it in general a huge impact and it's just inconsistent with how our system is set up. So if there are no further questions, we would ask this court to reverse and remand for a new trial. Thank you. Thank you counsel. Case 18-2074 is submitted for decision by the court.